IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:08-cr-106-6 |
| | ) | |
| -vs- | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER GRANTING DEFENDANT'S** |
| Sean Anthony Ogle, | ) | **MOTION TO SUPPRESS** |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant's motion to suppress evidence seized as a result of a traffic stop (Doc. #123 ). The United States filed a brief in opposition (Doc. #172). The Court held a hearing on January 23, 2009. The Court, having considered all of the briefs and documents filed by the parties as well as the evidence and arguments presented at the hearing, now issues this memorandum opinion and order.

## SUMMARY OF DECISION

The Court, having weighed the conflicting evidence, finds that the United States failed to prove there was probable cause for the traffic stop. Accordingly, Defendant's motion to suppress evidence seized as a result of the stop is hereby **GRANTED**.

## FACTUAL BACKGROUND

The United States had been investigating Jason Moe, Sean Ogle, and others for distributing narcotics in the Fargo, North Dakota area for a couple of years. According to testimony received at the suppression hearing, law enforcement officers began investigating a drug trafficking conspiracy involving Moe beginning in October 2006. Approximately two years later, on September 23, 2008, Moe and others were indicted in the District of North Dakota for conspiracy to distribute and distribution of controlled substances. A Complaint

against Ogle and a warrant for his arrest were issued on October 2, 2008.

Special Agent Orie Oksendahl testified as to the circumstances leading to the traffic stop of Ogle and subsequent search of him and his vehicle that resulted in the discovery of drugs and drug paraphernalia. Special Agent Oksendahl is employed with the Minnesota Bureau of Criminal Apprehension and also assigned to the Drug Enforcement Administration task force in Fargo, North Dakota. At the time of the traffic stop, Special Agent Oksendahl testified she was working as a DEA agent.

On October 1, 2008, Special Agents Oksendahl, Doug Henning, Jake May, and Mike Kaneko of the BCA along with Minneapolis Police Officer David Garmen arrived at Moe's residence in Minneapolis, Minnesota to arrest Moe on drug conspiracy charges in North Dakota. Special Agents Oksendahl and Henning drove together to the residence in an unmarked law enforcement vehicle. The other officers drove in their own vehicles.

As Special Agents Henning and Oksendahl approached Moe's residence, Special Agent Oksendahl observed a male walking out of the house. She recognized the male from a driver's license photograph as Sean Ogle. Ogle's name had come up many times during the trafficking investigation. Special Agent Oksendahl testified that Ogle was known to be one of Moe's co-conspirators. By this time in the investigation, law enforcement officers had talked to several individuals that indicated Ogle was their source of methamphetamine.

Special Agents Henning and Oksendahl continued driving slowly toward Moe's residence. Special Agent Oksendahl watched Ogle walk to a Honda Civic, which was parked in the street in front of the residence. She cannot recall if it was a two-door or a four-door vehicle. Nevertheless, Special Agent Oksendahl believed Ogle was the owner of the Civic. She

continued to observe Ogle as they were driving. Special Agent Oksendahl witnessed Ogle get into the driver's side of the vehicle for a brief period of time and then walk back toward Moe's house. The agents then circled the block.

When the agents approached Moe's residence for the second time, Special Agent Oksendahl saw Ogle slowly driving his vehicle away from the curb. She observed that Ogle was not wearing a seatbelt as he drove away. At this point, the agents discussed with each other and were on the radio discussing whether they should stop Ogle. Special Agent Oksendahl testified that she knew Ogle could not be legally stopped for the seatbelt violation if this was the only violation because it is a "secondary" violation. Thus, the agents continued to follow Ogle's vehicle.

As the agents followed Ogle, Special Agent Oksendahl testified she witnessed Ogle turn left without signaling. She further testified that Ogle made another left turn and a right turn, but could not recall if he signaled. The agents stopped Ogle for violating traffic laws. Special Agent Oksendahl testified that while the officers had a lot of information about Ogle's drug trafficking, it was not a factor in deciding to stop Ogle. She further testified that the reason for the stop was because Ogle failed to signal when turning left. Nonetheless, the law enforcement officers' reports indicate Ogle was stopped for not wearing his seatbelt and for a nonfunctional taillight.[1] Special Agent Henning informed Ogle in an recorded interview that he was stopped for a

---

[1] Special Agent Oksendahl conceded at the hearing that she did not observe a taillight out. However, the report she prepared at the time of the stop referenced a nonfunctional taillight as the basis for the stop. She attributed the error to "miscommunication" between herself and Special Agent Henning. She thought Special Agent Henning had said Ogle's taillight was out or not working. She "misunderstood what [Special Agent Henning] said as [they] were observing Mr. Ogle."

seatbelt violation.  Thus, not a single report prepared by any of the officers mentions failure to use a turn signal as basis for stopping Ogle's vehicle.  The first time the turn signal violation is proffered as the reason for the stop was in response to the suppression motion.

After Ogle was stopped, the agents asked Ogle if he would talk to them.  After being advised he was not under arrest and was free to leave, Ogle agreed to sit in the backseat of the agents' vehicle.  Once the interview began, Ogle expressed a desire to get a soda from his car.  Special Agent Henning walked to Ogle's vehicle and retrieved the soda.  Special Agent Oksendahl does not recall if Ogle told the agents where to find the soda.  As the interview progressed, the agents asked Ogle for his cell phone number.  Ogle stated he could not recall his number, but he could get it if he had his phone from the vehicle.  Special Agent Henning returned to Ogle's vehicle to get Ogle's cell phone.  On this visit Special Agent Henning reported seeing a bag of marijuana in plain view in Ogle's vehicle.  Upon the discovery of marijuana, Ogle was considered "in custody" by the agents.

Ogle's person and vehicle were searched incident to the arrest.  The vehicle search uncovered three small bags of marijuana, three small bags of methamphetamine, and blotter papers thought to contain LSD.  A search of Ogle uncovered a bag of methamphetamine and a glass pipe used for smoking methamphetamine.  Ogle seeks to suppress all evidence discovered as a result of the traffic stop.

## LAW AND ARGUMENT

Defendant Ogle argues that the officers had no reasonable and articulable suspicion to stop his vehicle, that the stop was really a pretext to investigate drug activity, and that all evidence obtained as a result of the stop should be suppressed as "fruit of the poisonous tree."

The United States makes two arguments in response: 1) the minor traffic violations gave the officers probable cause to stop Ogle's vehicle; and 2) the officers' collective knowledge of Ogle's drug trafficking activities was sufficient to provide probable cause to stop the vehicle and provides "an equally justified basis" for stopping the vehicle.

### A.   Probable Cause For the Traffic Violations

It is well settled that stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment. Johnson v. Crooks, 326 F.3d 995, 997 (8th Cir. 2003). Thus, an automobile stop is subject to the constitutional imperative that it not be "unreasonable." Id. (quoting Whren v. United States, 517 U.S. 806, 810 (1996)). To determine whether a stop was based on probable cause, the standard is one of "objective reasonableness." United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995) (quoting United States v. Miller, 20 F.3d 926, 929 (8th Cir. 1994)).

Any traffic violation, even a minor one, gives an officer probable cause to stop the violator. United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996). The government has the burden of proving law enforcement officers had probable cause for the stop. United States v. Andrews, 454 F.3d 919, 722 (8th Cir. 2006). A pretextual traffic stop, however, violates the Fourth Amendment. Pereira-Munoz, 59 F.3d at 791.

To determine whether the United States met its burden in this case, the Court must weigh conflicting evidence. On one side is the testimony from Special Agent Oksendahl. She testified that the primary basis for stopping Ogle was for a turn signal violation. On the other side are the law enforcement officers' reports prepared contemporaneously with the stop as well as a recorded interview with Ogle, neither of which mentions failure to signal as a basis for the stop.

The Court finds it significant that not a single report stated that failure to signal was a basis for the stop. In addition, Special Agent Oksendahl told Ogle during a recorded interview that the reason for the stop was a seatbelt violation. It was unrefuted that the first time the government proffered the turn signal violation as a basis for the stop was in response to the suppression motion. Moreover, when questioned during the hearing, Special Agent Oksendahl testified that at the time of the stop her main concern was the traffic violations Ogle allegedly committed. Nevertheless, neither she nor any of the other officers apparently correctly reported the basis that would give probable cause for the traffic stop. The agent's explanation for the error was "miscommunication" and a "misunderstanding" as to what they were observing.

After having the opportunity to consider the testimony and the parties' arguments, the Court finds more credible all the written documentation and the recorded interview completed within days of the stop then the conflicting testimony given three months after the stop. In rejecting the testimony from the United States that Ogle was stopped for a turn signal violation, the remaining bases to support the traffic stop include a "nonfunctional taillight" and failure to wear a seatbelt. Neither one is sufficient to justify the stop. Special Agent Oksendahl conceded at the hearing that she did not observe a taillight out and the agents did not rely on a "nonfunctional taillight" as a basis for the stop. Thus, probable cause to support the stop cannot derive from the alleged taillight violation that no one now believes occurred.

As to the seatbelt violation, Special Agent Oksendahl testified that she observed Ogle driving without a seatbelt. Her testimony regarding the seatbelt violation is consistent with the reports and other evidence. However, when Special Agent Oksendahl stopped Ogle, she knew that failure to wear a seatbelt is a "secondary" violation and she needed something more to

lawfully stop Ogle. While probable cause can be based on a mistaken belief that there was a violation to justify a stop, see United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008), in this case, there has been no mistake. Special Agent Oksendahl knew that Ogle must commit some other violation before there was probable cause to stop him. Thus, the agents knew the seatbelt violation, alone, was an insufficient basis to lawfully stop Ogle. Having not convinced the Court that there was any other traffic violation, the agents lacked probable cause to stop Ogle.

While the Court is cognizant that any minor traffic violation provides probable cause for a traffic stop, Bell, 86 F.3d at 822, the Court concludes that the United States failed to meet its burden of proof. The Court finds the testimony at the hearing three months after the stop less credible and insufficient to overcome all the reports and statements made contemporaneously with the stop. Because the United States failed to establish a traffic violation sufficient to justify a stop, the stop was in violation of the Fourth Amendment. Accordingly, evidence seized as a result of the traffic stop and Ogle's arrest is hereby suppressed.

### B. Collective Knowledge of the Officers

Collective knowledge of law enforcement officers is sufficient to provide reasonable suspicion and can be imputed to the officer initiating the traffic stop when there is some communication between the officers. United States v. Thompson, 533 F.2d 964, 969 (8th Cir. 2008). The United States argues that the collective knowledge of the DEA agents is an independent basis to justify the stop of Ogle's vehicle.

In this case, the evidence is clear that law enforcement officers, including Special Agent Oksendahl herself had developed information that Ogle was involved in drug trafficking. However, it is also clear that Ogle was not stopped based on the agents' knowledge of his drug

trafficking. Special Agent Oksendahl repeatedly testified that she did not stop Ogle based on her or other officers' knowledge of drug trafficking:

> Q. Well, what was the - - not the purpose, what was the reason for stopping the vehicle?
>
> A. For not using the turn signal and the secondary violation of the no seat belt.
>
> \* \* \*
>
> Q. So you said something like we stopped you for a seat belt violation but we're done with that now. Do you recall that?
>
> A. Yes, meaning done with the traffic violation portion of it.
>
> Q. Right. I mean, that really wasn't the big concern to you, right? The traffic violation itself?
>
> A. Well, that was the reason we stopped him.
>
> Q. And I'm not going to make a big deal out of it but wasn't the real reason because he was leaving Mr. Moe's residence and you had been investigating him for drug trafficking and you were interested in the information about drug trafficking? Isn't that really the goal?
>
> A. The reason we stopped him was because of the traffic violations and we did have all this information on him, yes. But the reason that he was stopped was because of the traffic violations.
>
> \* \* \*
>
> Q. And when you initially observed these traffic violations and you and Agent Henning decided to pull him over, was your intention at that point to arrest him for any type of drug activity?
>
> A. No. I believe we probably could have but that wasn't our intention at the time.

The determination of whether probable cause exists is not to be made from the vantage of hindsight. See United States v. Coney, 456 F.3d 850, 857 (8th Cir. 2006) (stating whether

probable cause exists is not to be made with the vision of hindsight, but instead by looking to what officers reasonably knew at the time); see also United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993) (noting that a court cannot find probable cause exists if an officer testifies that he did not see a traffic violation or did not have probable cause to believe a violation occurred, but only discovered after the stop or the arrest that there was a violation to support a finding of probable cause); United States v. Garcia, 450 F.Supp. 1020, 1024 (E.D.N.Y. 1978) (stating court cannot view the stop of defendant from the vantage of hindsight and conclude the stop was reasonable because it was later developed that the agents' suspicions were justified).

In this case, the Court has the benefit of the testimony from one of the officers that effectuated the stop. She testified that even though the agents had knowledge of Ogle's alleged drug trafficking, Ogle's suspected drug activity played no role in the decision to stop his vehicle. The United States has had the substantial benefit of hindsight and asserts that the traffic stop was lawful because it was based on the officers' collective knowledge of the drug trafficking investigation; however, the evidence is to the contrary. According to the testimony, the officers did not rely on their drug trafficking investigation in deciding to stop Ogle's vehicle. According to Special Agent Oksendahl, the reason for stopping Ogle was because of the traffic violations. Thus, the agents stopped Ogle solely to enforce traffic laws and then decided to try to talk to him. Special Agent Oksendahl specifically testified that her concern at the time of the stop was not Ogle's alleged involvement in drug trafficking. It is clear that probable cause to stop Ogle was based solely on alleged traffic violations.

In order to accept the United States' argument that the stop is justified because of the officers' collective knowledge of Ogle's drug trafficking, the Court would be required to ignore

the testimony so that it can rationalize, in hindsight, a lawful basis for the stop. Probable cause determinations are to be made by what the officers reasonably know at the time of the stop. Coney, 456 F.3d at 857. Further, the traffic stop must be objectively reasonable. Pereira-Munoz, 59 F.3d at 791. While the officers might have known about Ogle's suspected drug trafficking activities, they did not rely on their investigative information when they stopped him. According to the agent's testimony, Ogle was stopped because he violated traffic laws. It is not objectively reasonable to validate a stop based on hindsight vision when the newly proffered basis is contrary to the evidence. As such, the Court rejects the United States' argument regarding the officers' collective knowledge. Because the officers lacked probable cause to stop Ogle's vehicle for traffic violations and testified they were not stopping him for his suspected drug trafficking, the Court concludes the stop violated the Fourth Amendment and any evidence seized as a result must be suppressed.

## CONCLUSION

Based on the foregoing reasons, the Court finds the United States failed to establish probable cause to stop Ogle's vehicle. Accordingly, Defendant's motion to suppress is **GRANTED**. Any evidence seized as a result of the traffic stop must be excluded as "fruit of the poisonous tree."

**IT IS SO ORDERED**.

Dated this 2nd day of February, 2009.

/s/ Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court